IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JESSICA TODD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No: 1:14-cv-01141-STA-tmp |
| | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Jessica Todd filed this action to obtain judicial review of Defendant Commissioner's final decision denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act ("Act"). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on December 17, 2012. On February 14, 2013, the ALJ denied the claim.[1] The Appeals Council subsequently denied the request for review. Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

---

[1] Pursuant to Acquiescence Rulings 98-3(6) and 98-4(6), *Denard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990), and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), the Commissioner was bound by a prior decision dated July 30, 2010, and, therefore, only the period after that decision was under consideration in this proceeding.

or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[2] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[3] and whether the correct legal standards were applied.[4]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] It is "more than a mere scintilla of evidence, but less than a preponderance."[6] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[7] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[8]

Plaintiff was born on November 7, 1976, and alleges that she became disabled beginning July 31, 2010. In her disability report, she alleged disability due to anxiety attacks, clinical depression, panic attacks, degenerative disc disease, chronic obstructive pulmonary disease, a

---

[2] 42 U.S.C. § 405(g).

[3] *Id.*

[4] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[5] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[6] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[7] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[8] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

pinched nerve in her neck, bone spurs in her neck, carpal tunnel syndrome, and bipolar disorder. She previously worked as a certified nursing assistant, cashier, parts racker, and assembler.

The ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since the application date; (2) Plaintiff has severe impairments of arthritis, carpal tunnel syndrome, rotator cuff tendonitis and impingement, chronic obstructive pulmonary disease, degenerative disc disease, hypertension, cervical disc degeneration and radiculopathy, major depressive disorder, and anxiety disorder; but she does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (3) Plaintiff retains the residual functional capacity to lift/carry a maximum of twenty-five pounds occasionally and ten pounds frequently; she can stand/walk two hours of an eight-hour workday and sit for a total of six hours during the same workday; she can never climb ladders, ropes, or scaffolds, but she can occasionally climb stairs, balance, stoop, crouch, kneel, or crawl; she can frequently reach and finger; she should avoid exposure to vibration and workplace hazards, such as unprotected heights and dangerous machinery; she should have the option to sit or stand at her discretion; she can perform simple, routine, repetitive tasks, maintain attention and concentration for two-hour periods, have occasional interaction with coworkers and supervisors, and adjust to routine workplace hazards;[9] (4) Plaintiff is unable to perform her past relevant work; (5) Plaintiff was a younger individual with a limited education on the application date; (6) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ("the grids") as a framework supports a finding that Plaintiff is not disabled whether or not she has transferable job

---

[9] The ALJ adopted the finding as to Plaintiff's residual functional capacity from the prior decision on the ground that there was no significant change in her allegations of symptoms or pain.

skills; (7) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (8) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[10]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[11] The claimant bears the ultimate burden of establishing an entitlement to benefits.[12] The initial burden of going forward is on the claimant to show that he or she is disabled from engaging in his or her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[13]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

    1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

    2. An individual who does not have a severe impairment will not be found to be disabled.

    3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

    4. An individual who can perform work that he has done in the past will not be found to be disabled.

---

[10] R. 30 - 38.

[11] 42 U.S.C. § 423(d)(1).

[12] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[13] *Id.*

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[14]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[15] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform her past relevant work, there are a significant number of jobs existing in the national economy that she can perform.

Plaintiff argues that substantial evidence does not support the ALJ's decision. She specifically argues that the ALJ erred in the weighing of the medical evidence, in the assessment of her credibility, and in formulating the residual functional capacity finding. Plaintiff's arguments are not persuasive.

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[16] The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence, (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."[17]

---

[14] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[15] 20 C.F.R. § 404.1520(a).

[16] 20 C.F.R. § 404.1527(c)(2).

[17] Soc. Sec. Rul. 96–2P, 1996 WL 374188 at *3 (July 2, 1996).

If an ALJ decides that the opinion of a treating source should not be given controlling weight, the ALJ must take certain factors into consideration when determining how much weight to give the opinion, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."[18] Any decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[19]

Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[20] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[21] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[22] Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical

---

[18] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

[19] Soc. Sec. Rul. 96–2P, 1996 WL 374188 at *5 (July 2, 1996).

[20] 20 C.F.R. § 404.1502, 404.1527(c)(1).

[21] *Id.* § 404.1502, 404.1527(c)(2).

[22] Soc. Sec. Rul. No. 96–6p, 1996 WL 374180 at *2.

opinion.[23] State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.[24]

In the present case, substantial evidence supports the weight given to the medical evidence and opinions in the record and the evaluation of Plaintiff's residual functional capacity. The ALJ properly determined that Plaintiff could perform a reduced range of light work.

Plaintiff argues that the ALJ should have found her disabled based on the opinion of treating orthopedic physician Alan Pechacek, M.D. Instead of giving Dr. Pechacek's opinion controlling weight, the ALJ gave it little weight on the grounds that the opinion was not supported by Dr. Pechacek's own treatment notes or by other evidence in the record and because Plaintiff had not had a significant change in her symptoms since the Commissioner's earlier decision.

In a medical source statement form, Dr. Pechacek opined that Plaintiff could lift less than ten pounds with either arm or hand; she could not push, pull, lift, or carry with her right arm, and she "would be limited" with the left hand because of pain and "abnormal feeling/sensation." She could never climb or crawl due to her inability to use her arms. Plaintiff was limited in reaching, handling, fingering, and feeling. She could perform reaching, handling, fingering, and feeling occasionally with the left hand but could not perform these tasks at all with the right arm.

---

[23] 20 C.F.R. § 404.1527(c).

[24] *See* 20 C.F.R. § 404.1527(e)(2)(i); Soc. Sec. Rul. 96-6p, 1996 WL 374180, 61 Fed. Reg. 34,466-01 (July 2, 1996).

Additionally, Dr. Pechacek opined that cold and/or humidity and vibration could aggravate her pain and that she might not be able to protect herself from hazardous situations.[25]

Despite this opinion, Dr. Pechacek's treatment notes reported Plaintiff as being alert, cooperative, and in no acute distress. While Plaintiff's right shoulder had some tenderness and moderate restriction of motion, Plaintiff's fingers had good sensation and circulation. Dr. Pechachek's treatment notes indicated that Plaintiff had normal strength despite her complaints of pain. There is no evidence from the treatment notes supporting the extreme limitations in the use of both hands that Dr. Pechacek mentioned in the medical source treatment form and no indication that he told Plaintiff that she should limit her activities.

Other evidence cited by the ALJ supported a finding that Plaintiff had significantly greater ability to use her hands and arms than Dr. Pechacek indicated. Consultative examiner John B. Woods, M.D., reported that Plaintiff's musculoskeletal system was completely normal; Plaintiff had normal muscle strength and range of motion, including in her shoulders, and she did not have any clinically observable joint problems.[26] The ALJ also pointed out that consulting psychologist William R. Sewell, Ph.D., diagnosed Plaintiff with malingering and "feigning" in March 2010.[27]

The Court finds that the ALJ had good reasons to discount Dr. Pechacek's opinion, and substantial evidence supports the weighing of his opinion.

Next, Plaintiff complains of the ALJ's credibility assessment. A claimant's credibility comes into question when his or her "complaints regarding symptoms, or their intensity and

---

[25] R. 820-23.

[26] R. 693.

[27] R. 264.

8

persistence, are not supported by objective medical evidence."[28] To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[29] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying,"[30] although the ALJ's credibility finding must find support in the record.

In making the credibility assessment, the ALJ looked at the following. Plaintiff was treated by Wendy Cran-Carty, M.D., from August 2009 to September 2010. Plaintiff complained of extreme pain in her shoulder and neck, but her cervical MRI was essentially normal. Plaintiff was dismissed from Dr. Cran-Carty's care because she violated the pain management agreement.[31] As discussed above, Dr. Woods found that, although Plaintiff had some limited range of motion in her spine, she otherwise had a normal musculoskeletal system, including normal strength, normal gait, and normal ability to stand up from a chair.[32]

The ALJ also looked at inconsistencies between Plaintiff's claimed limitations and medical evidence. For example, Plaintiff complained of shortness of breath related to chronic obstructive pulmonary disease, but, when Plaintiff sought treatment in April 2011, her oxygen

---

[28] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[29] *Id.*

[30] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

[31] R. 374.

[32] R. 692-95.

9

saturation was 100 percent, and her chest x-rays revealed only mild findings.[33] The ALJ also pointed out that Plaintiff appeared to have limited range of motion in her back and neck during testing, but that there was no spinal tenderness, spasms, or muscle wasting consistent with those limitations.[34]

As for Plaintiff's mental capabilities, as noted above, Dr. Sewell opined that Plaintiff was malingering and feigning mental disorders. When Dr. Sewell administered Plaintiff the "M-FAST" test, Plaintiff endorsed "very extreme and uncommon symptoms," but Plaintiff's clinical appearance was inconsistent with the limitations she endorsed.[35] Dr. Sewell noted that Plaintiff was "readily influenced by the evaluator's suggestion," that is, she endorsed any symptom suggested by the doctor. Plaintiff's exaggeration of her symptoms diminished her credibility. Despite Plaintiff's alleged symptoms, Dr. Sewell's examination revealed no signs of psychotic processing. Dr. Sewell opined that Plaintiff's ability to understand and remember, carry out instructions, and interact with coworkers would not be impaired.[36]

The Court finds no error in the ALJ's credibility determination because Plaintiff did not provide objective medical evidence to establish the intensity and persistence of her alleged symptoms, and the record as a whole does not indicate that her condition was of disabling severity. Although Plaintiff presented objective medical evidence of an underlying medical condition and the ALJ found that her impairments could reasonably cause the kind of limitations alleged by Plaintiff, Plaintiff's statements about the intensity, persistence, and limiting effect of

---

[33] R. 569.

[34] R. 692-94.

[35] R. 264.

[36] *Id.*

her alleged symptoms were not entirely credible because they were inconsistent with the evidence of record. The ALJ carefully considered the record as a whole. Accordingly, the ALJ's credibility determination is supported by substantial evidence.

Plaintiff additionally argues that it was unfair for the ALJ to find that her residual functional capacity had not changed from the time of the previous ALJ decision on the ground that she had submitted evidence showing that her impairments worsened. She also points out that the current ALJ found that she had several severe impairments - arthritis, rotator cuff tendonitis/impingement, chronic obstructive pulmonary disease, hypertension, and major depressive disorder - that were not included at the corresponding step of the previous decision. She reasons that, since her severe impairments changed, the ALJ should have found her residual functional capacity had also worsened.

A subsequent ALJ is estopped, on *res judicata* grounds, from contradicting a prior determination that a claimant was unable to perform his or her past relevant work.[37] "When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances."[38] Thus, if an earlier ALJ makes a finding regarding a claimant's residual functional capacity, a subsequent ALJ is bound by that determination absent additional evidence that would support a contrary finding.[39] Those circumstances are not present in this case.

The present ALJ determined that Plaintiff's complaints had not really changed and that her treatment history suggested that she did not have any worse problems. The fact that "the two

---

[37] *Denard,* 907 F.2d at 598–99.

[38] *Drummond*, 126 F.3d at 840–42.

[39] *See, e.g.*, *Gay v. Comm'r of Soc. Sec.*, 520 F App'x. 354, 356 (6th Cir. 2013).

ALJ's did make somewhat different findings with regard to the 'severe' impairments" was not crucial to a finding of changed circumstances because the "mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown."[40] Even though the ALJ's list of severe impairments at step two was different than the previous decision, there is no evidence other than Dr. Pechacek's opinion, which the ALJ rejected, to show that Plaintiff's residual functional capacity had materially changed.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[41] The Commissioner may carry this burden by applying the grids[42] which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills.[43] The grids take administrative notice of a significant number of unskilled jobs a claimant can perform given his residual functional capacity.[44] Here, the grids would direct a finding of not disabled for a person of Plaintiff's age, education, work history, and residual functional capacity if she could perform the full range of light work.[45]

---

[40] *Howard v. Astrue*, 2008 WL 1023908 (E. D. Kentucky, April 9, 2008) (determining that the ALJ properly adopted the prior decision's residual functional capacity finding even though the step two assessment was slightly different).

[41] *Jones*, 336 F.3d at 474.

[42] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[43] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

[44] *See* 20 C.F.R. part 404, subpart p, appendix 2, § 200.00(b); Social Security Ruling 85-15, 1985 WL.

[45] *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.21.

Because she could only perform a limited range of light work, the ALJ obtained the testimony of a vocational expert.

Plaintiff argues that the ALJ should have found her disabled because, when asked a hypothetical question based on Dr. Pecachek's opinion, the vocational expert testified that Plaintiff would be disabled.[46] Because the ALJ rejected Dr. Pechacek's opinion, the ALJ was not required to rely on vocational expert testimony based on that opinion. An ALJ is only required to incorporate into a hypothetical question those limitations he or she finds credible.[47] A vocational expert's testimony in response to a hypothetical question that accurately portrays a claimant's vocational abilities and limitations provides substantial evidence to meet the Commissioner's burden at the fifth step of the sequential evaluation process.[48]

Finally, Plaintiff contends that the Commissioner failed to show a significant number of jobs existing in the national economy that she could perform. Based on the vocational expert's testimony, the ALJ found that Plaintiff could perform work as a sedentary inspector, with 400 jobs in Tennessee and 15,000 jobs in the national economy, and as a packer, with 500 jobs in Tennessee and 18,000 jobs in the national economy.[49] Thus, there were 900 total jobs in the state and more than 30,000 jobs in the national economy that Plaintiff could perform.

The Act provides that "work which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions

---

[46] R. 51-55, 61-63.

[47] *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

[48] *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010).

[49] R. 62-63.

of the country."[50] "[T]the number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy - not just a local area."[51] Courts have refused "to set forth one special number which is to be the boundary between a 'significant number' and an insignificant number."[52] However, the numbers presented in this case, 900 within the state and 30,000 nationally, have been found to be within the parameters of "a significant number of jobs" in other cases.[53] The Court finds no error in the ALJ's decision.

Substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:   September 1, 2017.

---

[50] *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

[51] *Id.*

[52] *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 906 (6th Cir. 2016) (quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)).

[53] *See, e.g., Taskila.*, 819 F.3d at 905 (6,000 jobs nationally significant); *Longmire v. Comm'r of Soc. Sec.*, 2014 WL 2573953 *3 (W. D. Tenn., June 9, 2014) (750 jobs in the state and 19,050 jobs nationally significant).